**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO.  2:23-CR-00023-01** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **KIRK AUGUST (01)** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

On May 14, 2022, officers of the Lake Charles Police Department executed a search warrant at the home of defendant Kirk August and found physical evidence leading to his indictment for Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2). Doc. 1; doc. 39, att. 1, p. 1-2.  Before the court is a motion to suppress the evidence seized pursuant to that search warrant.  Doc. 39.  Defendant argues that the affidavit requesting the search warrant contained statements gleaned from an unconstitutional search of the curtilage surrounding defendant's home and his home's interior and is therefore invalid.  *Id.*  The court conducted an evidentiary hearing, and the parties produced testimony from police officers Robert Rainwater, Dakota Baccigalopi, Brennan Bernat, and Dustin Fontenot as well as documentary evidence and body camera videos attached to the memoranda.  Docs. 39, 47, 55-57.

Based on our review of the law, the memoranda filed by the parties, and the testimony and evidence adduced at hearing, we **RECOMMEND** that the motion [doc. 39] be **DENIED**.

# I.
## BACKGROUND

Officers arrived at Kirk August's home on May 14, 2022, in response to 911 call from a neighbor down the street reporting shots fired in the vicinity of August's backyard.[1] Once there, two of the officers, Corporals Baccigalopi and Bernat, approached August's home through the adjoining neighbor's backyard and began to speak with August over the hurricane fence enclosing August's backyard. A neighbor caught the attention of a third officer, Corporal Rainwater, and informed him that she had seen August in his backyard shooting a black pistol that day, but that she had lost sight of August and the gun somewhere in his backyard. Corporal Rainwater, who was personally aware that August is a convicted felon, radioed the other officers on the scene that August could be armed, per the neighbor's information.[2] All actions related to the search of August's property occurred after Corporal Rainwater issued this warning. On receiving this information, Corporal Baccigalopi directed August to put his hands on his head and walk backwards toward the fence to be patted down for a weapon. The officer conducted the pat down while still standing in the neighbor's backyard by reaching over the fence. He asked August if he was a convicted felon, which August admitted. August denied having heard shots fired, but he said that he had been at the residence all day. Corporal Baccigalopi testified that he thought August was being evasive and lying to him. He did not find a weapon on August's person.

After Corporal Rainwater issued the warning that August could be armed, he and Corporal Bernat jumped the fence into August's backyard. August did not give consent to their entry. Corporal Bernat testified that they entered August's backyard for safety reasons: if he did have a

---

[1] August's home is located at 710 Lyons Street in Lake Charles, LA.

[2] Corporal Rainwater used the term "Sig8" or "Signal 8" to communicate to the other officers that August could be armed.

firearm in close proximity, they would prefer to be near him to prevent his obtaining it. The officers looked at the area where the neighbor reported seeing him firing the pistol. They observed shell casings and a makeshift target with bullet holes, confirming the reports of the neighbors that August had been firing a weapon. Corporal Bernat testified that, although he did not observe the shell casings from his prior position in the neighbor's backyard, they were observable from that position, once he knew where to look. Corporal Bernat arrested August after learning on the scene that August is a convicted felon and observing the shell casings and target in the backyard.

The neighbor had indicated that she last saw August with the gun in his backyard, but that she last saw August when he was near his car, which was parked near the road in a driveway extending alongside the house. The car was a convertible with its top down. Standing next to the car, Corporal Baccigalopi observed a baggie that appeared to contain narcotics in plain view convertible's cupholder area. Without August's consent, he removed keys from the ignition of the car.

Officers determined it was necessary to perform a protective sweep of the area, including the interior of August's home. They used the keys taken from the ignition to enter the house without August's consent. The sweep took approximately three minutes. During it, Corporal Bernat observed a firearm magazine/clip inside the house in plain view. The sweep extended to the convertible, where the officers searched the glove compartment, seat, floor, center console, and pockets. They found live ammunition in a grocery bag in the pocket of the driver-side door.

Corporal Bernat had a telephone conversation with Dustin Fontenot, the detective on call, who prepared an affidavit and paperwork requesting a warrant to search August's home for firearms. The affidavit recounted that officers arrived at August's residence in response to a report of shots fired, that a witness had seen August outside with a firearm, that officers observed spent

casings on the premises, that a officers observed "meth and ammunition in plain view"[3] inside a convertible parked at the residence with its top down, that officers conducted a protective sweep due to the nature of the call, and that they observed a firearm magazine in plain view inside the residence.  Doc. 39, att. 7.  A state district court judge issued the warrant, which the officers executed that day, recovering a rifle, shotgun, and ammunition.  Doc. 1.  A grand jury later indicted August on the charges listed above.

## I.
### LAW AND ANALYSIS

The Fourth Amendment protects an individual's right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  The remedy for evidence seized by law enforcement in violation of the Fourth Amendment is the exclusion of the unconstitutionally seized evidence at trial.  *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011). This exclusionary remedy is not a personal constitutional right, but a remedy aimed at preventing police misconduct. *See United States v. Leon*, 104 S. Ct. 3405, 3412 (1984) (quoting *United States v. Calandra*, 94 S. Ct. 613, 620 (1974) ("The rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'")). The burden generally rests on the defendant to show, by a preponderance of the evidence, that the material in question was seized in violation of his constitutional rights. *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993).  The burden shifts to the government to justify a warrantless search. *Id.*

The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 100 S. Ct. 1371, 1379 (1980) (quoting *United States*

---

[3] At hearing, Corporal Bernat testified that the warrant affidavit contained a mistake, in that the ammunition in the car was not in plain view, although the bag that Corporal Baccigalopi believed to contain methamphetamine was in plain view.

*v. U.S. Dist. Ct.*, 92 S. Ct. 2125, 2134 (1972)).  For the purposes of Fourth Amendment analysis, the area "immediately surrounding and associated with the home[,]" known as the "curtilage" is considered part of the home itself.  *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013).  We treat August's backyard as part of the protected curtilage because it is surrounded by hurricane fencing and filled with spillover objects from the home's interior, as shown on body camera footage. "[T]he Fourth Amendment limits an officer's ability to enter a private dwelling to make a warrantless arrest."  *Sauceda v. City of San Benito, Texas*, 78 F.4th 174, 183 (5th Cir. 2023).  Because August's arrest took place in a constitutionally protected area, we must determine whether the officers arrived there through an "unlicensed physical intrusion."  *Jardines*, 133 S. Ct. at 1415.

### A.  Because of exigent circumstances and the need to perform a protective sweep, officers did not violate August's Fourth Amendment rights by entering the curtilage and performing a cursory search of his residence.

Warrantless searches are per se unreasonable under the Fourth Amendment, subject to a few specific exceptions.  *United States v. Mata*, 517 F.3d 279, 285 (5th Cir. 2008).  One exception is when officers perform a protective seep incident to an arrest.  *Id.*  There are three variations of a protective "safety personnel sweep," the third of which is applicable here:

> First, incident to an arrest, law enforcement officers may contemporaneously search areas within the arrestee's immediate control to prevent the destruction of evidence or procurement of a weapon.  Second, officers may search areas immediately adjoining the place of arrest, such as closets and other spaces, from which a surprise attack could occur. Probable cause or reasonable suspicion is not necessary for these first two variations. Third, officers may also perform cursory "protective sweeps" of larger areas if they have articulable facts plus rational inferences that allow a reasonable officer to suspect that an individual dangerous to the officers is within the area to be searched.

*Id.* (footnotes omitted).  The government argues that the third variation of the protective sweep exception applies here because the officers had reasonable suspicion that an individual dangerous

to the officers was within the area to be searched.  The United States Court of Appeals, Fifth

Circuit, has laid out several requirements pertaining to the third variety of protective sweep:

> First, the police must have entered legally and for a legitimate law
> enforcement purpose. Second, the officers must have a reasonable,
> articulable suspicion that the area to be swept contains a person posing a
> danger to those on the scene. Third, the protective sweep must be limited to
> a cursory inspection of only those spaces where a person may hide; it is not
> a full search of the premises. Finally, officers must conclude the sweep once
> they have dispelled their reasonable suspicion of danger, and they may not
> continue the sweep after they are no longer justified in remaining on the
> premises.

*Id.* at 286 (footnotes omitted).

### 1.  *The protective sweep was incident to an arrest supported by probable cause.*

A threshold question is whether the protective sweep was conducted "incident to an arrest."

*Mata*, 517 F.3d at 285.  There is no question that August was arrested.  Further, officers had

probable cause to arrest August as a felon in possession of a weapon before conducting the sweep.

Probable cause for an arrest "exists when all of the facts known by a police officer 'are sufficient

for a reasonable person to conclude that the suspect had committed, or was in the process of

committing, an offense.'" *Texas v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017) (quoting *United

States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999)).  Probable cause is properly formulated using

information from a known eyewitness. *United States v. Burbridge*, 252 F.3d 775, 778 (5th Cir.

2001).  "The arresting officer need only know with 'fair probability' that the defendant committed

the felony, which requires more than a 'bare suspicion' but less than a preponderance of evidence."

*United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001) (quoting *United States v. Garcia*, 179

F.3d 265, 269 (5th Cir. 1999)).  Here, there was a "fair probability" that August had been in

possession of a weapon because of his two neighbors' eyewitness information to that effect, his

evasiveness when questioned about hearing shots, and the corroborating shell casings and target

in the backyard.  Because he was known to the officers to be a convicted felon, probable cause therefore existed for his arrest.

### 2. *The officers entered August's property legally for a legitimate law enforcement purpose because of exigent circumstances.*

The first requirement for a valid protective sweep is that officers "entered legally and for a legitimate law enforcement purpose."  *Mata*, 517 F. 3d at 286.  Defendant asserts that this requirement is not met, that officers illegally entered the curtilage, a part of yard under Fourth Amendment protection, and that there was no evidence of value in plain view before they entered the yard.  The government argues, and we agree, that probable cause for arrest and exigent circumstances justified the officers' warrantless entry into the curtilage.

Officers entered the curtilage of August's home without consent after speaking with him and patting him down for weapons.  Had officers entered the curtilage solely *to gather evidence*, that search would be  presumptively unreasonable without a warrant.  *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018).  Here, however, exigent circumstances justified the entry.

"Although a warrantless entry into a home is presumptively unreasonable, entry may be justified by exigent circumstances."  *United States v. Blount*, 123 F.3d 831, 837 (5th Cir. 1997). "The government bears the burden of proving that an exigency existed." *Id*.  "Exigent circumstances generally exist where there is a risk that the officers or innocent bystanders will be endangered, or that evidence will be destroyed."  *Id*.  Factors a court may consider to determine whether exigent circumstances existed include "the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought."  *Mata*, 517 F.3d at 287; *United States v. Blount*, 123 F.3d 831, 837 (5th Cir. 1997).

Courts apply the exigent-circumstances exception on a case-by-case basis. *Lange v. California*, 141 S. Ct. 2011, 2018 (2021). "Whether a 'now or never situation' actually exists—whether an officer has 'no time to secure a warrant'—depends upon facts on the ground." *Id.*

In this case, considering the 911 call and the neighbor's report that she had seen August with a handgun but had lost sight of him and the gun in the backyard, a reasonable officer outside August's home could have concluded that August had a weapon concealed nearby, which could pose a threat to the officers as long as they could not prevent him from reaching it. Corporal Bernat testified that is why he entered the curtilage. These exigent circumstances justified the officers' entry into the curtilage, and the officers therefore "entered legally and for a legitimate law enforcement purpose," satisfying the first prong of the protective sweep analysis.

### 3. The officers had a reasonable, articulable suspicion that the area to be swept contained a person posing a danger to those on the scene.

The second requirement for a valid protective sweep is that the area contains a person posing a danger to those on the scene. Neighbors reported hearing shots, but officers had not yet definitively identified the shooter after speaking to August, who denied having heard any shots. This left the reasonable possibility of an unknown second armed person on the premises who posed a danger. The reasonable possibility of an unknown person on the scene who poses a danger is sufficient to justify a protective sweep. *See United States v. Mata*, 517 F.3d 279, 289 (5th Cir. 2008). The second requirement is therefore met.

### 4. The protective sweep limited to a cursory inspection that ended when officers dispelled their reasonable suspicion of danger.

The third and fourth requirements for a valid protective sweep are that it is limited to a cursory inspection of spaces where a person may hide and that officers conclude the sweep once they have dispelled their reasonable suspicion of danger. *Mata*, 517 F.3d at 286. Corporal

Rainwater testified that the officers remained in the house no longer than necessary to conduct the sweep. Body camera footage shows that the protective sweep of the house lasted approximately three minutes. We conclude that it was a cursory inspection that ended when officers dispelled the suspicion of a concealed person, and that the third and fourth requirements are therefore met.

We conclude that officers conducted a valid protective sweep of August's backyard and residence incident to his arrest. We therefore find, and we recommend that the district judge find, that the police did not violate August's Fourth Amendment rights by conducting a cursory warrantless search of his backyard and residence. Because the exclusionary rule does not apply to the observation of the firearm magazine in August's residence during the protective sweep, we recommend that the motion to suppress be denied.

**B. The independent source rule applies.**

Defendant also argues that the police unconstitutionally searched the car parked in the driveway of August's home when, without a warrant, they searched the car's interior. The protective sweep doctrine is limited to "a cursory inspection of only those spaces where a person may hide; it is not a full search of the premises[.]" *United States v. Mata*, 517 F.3d 279, 286 (5th Cir. 2008). A person could not be concealed in the small pockets of the car. The government responds that the car was not inside the curtilage because it was parked in a residential driveway near the street, observable from the street, and that the officers were lawfully present in this area when they observed narcotics in the cupholder area.

Under the independent source rule, "information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source." *United States v. Hearn*, 563 F.3d 95, 102 (5th Cir. 2009). We need not decide whether the warrantless search of the car was constitutional because the warrant was still facially valid when scrubbed of

the facts gleaned from the search of the car's compartments.  To the extent that the warrant in this case is tainted by improperly-obtained evidence, independent source doctrine operates to remove that taint:

> This circuit undertakes a two-part analysis to determine whether the independent source rule applies: "(1) does the warrant affidavit, when purged of tainted information gained through the initial illegal entry, contain sufficient remaining facts to constitute probable cause ('probable cause'); and (2) did the illegal search affect or motivate the officers' decision to procure the search warrant ('effect of the illegal entry')."

*Hearn*, 563 F.3d at 102 (internal citations omitted).

The affidavit includes a fact culled from the warrantless search of the car:  the presence of ammunition in a bag in the driver door pocket (mistakenly reported to have been in plain view), and the presence of a bag believed to be narcotics in plain view in the cupholder area.  Doc. 39, att. 7.  Scrubbed of this tainted information, however, the warrant affidavit still contains sufficient facts to constitute probable cause, as detailed above.  It describes the 911 report of shots fired, the witness statement recounting her observation of August with a firearm, the officers' observation of spent casings outside the property, and the officers' observation of a firearm magazine in plain view inside the residence.  Further, there is no indication that the warrantless search of the car motivated the officers' decision to procure the warrant.  Because the independent source rule applies, it would be improper to exclude evidence obtained as a result of the warrant.

### III.
#### CONCLUSION

For the reasons given we **RECOMMEND** the Motion to Suppress [doc. 39] be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed

factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Assn*, 79 F.3d 1415, 1429-30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 2nd$^t$ day of January, 2024.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE